UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBERT BOOKER, JR.,

        Plaintiff,        Case No. 06-14752

vs.        HONORABLE CHIEF JUDGE BERNARD A. FRIEDMAN
        HONORABLE STEVEN D. PEPE

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.
=========================/

## Report and Recommendation

### I.    Background

Albert Booker Jr. brought this action under 42 U.S.C. § 405(g) and § 1383(c)(3) for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Both parties have filed motions for summary Judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

### A.    Procedural History

Plaintiff filed an application for DIB and SSI on April 29, 2003, alleging disability due to shoulder pain, back pain, cramping in his hands and calves, severe headaches, diabetes and chest pain, beginning March 1, 2003 (R. 52-54, 76). In a July 2005 letter, through his attorney,

1

Plaintiff amended his disability application to reflect an alleged onset date of May 12, 2003 (R. 111). Plaintiff's claims were initially denied on October 1, 2003 (R. 27). Thereafter, Plaintiff filed an untimely written request for hearing on December 9, 2003 (R. 32). Good cause was established for the late filing (R. 18), and an administrative Video Hearing was held on January 26, 2006. Plaintiff was represented by attorney, Andrea Hamm, and Vocational Expert (VE) Jacqueline Schabacker also testified (R. 18). On April 26, 2006, Administrative Law Judge ("ALJ") Richard P. Laverdure issued an opinion denying Plaintiff's applications (R. 15). The Appeals Council denied Plaintiff's request for review on October 13, 2006 (R. 6).

### B.  Background Facts

#### 1.  Plaintiff Testimony

*Disability Application*

Plaintiff was born September 6, 1955, and was fifty years old at the time of his hearing (R. 76). He has a tenth grade education, and has not completed any special job, trade or vocational training (R. 73). Plaintiff's past work was as a nursing assistant and as an orderly (R. 79). He also worked on a maintenance crew while he was incarcerated between 1988 and 1995 and as a line server while he was incarcerated between 2001 and 2003.

*Testimony at Hearing*

Plaintiff reported severe pain in his shoulders and lower back, cramping and a burning sensation in his calves and hands, severe headaches, diabetes, and chest pains (R. 477-85). Plaintiff attributed his shoulder pain to an injury suffered years ago while lifting weights (R. 477). He does not have full range of motion in his shoulder and has been diagnosed with bursitis and arthritis in his shoulders (R. 477-78). Plaintiff testified he has been treated with Cortisone shots, and he was awaiting a decision determining if surgery would be necessary (R. 478). He

described his low back problems as a tightening or stiffening of the low back if he sits or stands for too long.  Plaintiff attributes the burning sensation and cramping in his legs and hands to his diabetes (R. 479).  Plaintiff reported that he has experienced chest pains in the past (R. 480).  He was told he suffered a "silent heart attack," and he was being treated with nitroglycerine for his chest pains (R. 480-81).  Plaintiff also suffered from severe headaches, which he had not yet reported to his doctor at the time of the hearing (R. 482).  Plaintiff was a diabetic and was being treated with insulin shots twice daily (R.483).

Plaintiff treated his pain complaints with Icy Hot, ice, hot towels, laying in different positions and muscle relaxers (R. 485).  He also received massages from a friend.  He reported that these treatments eased his pain, but they did not relieve it.  Plaintiff often awoke at night due to pain (R. 476).  He used to take a Tylenol No. 3, but that made him sick and did not help.  It generally took him thirty to sixty minutes to get to sleep.

Plaintiff currently lives in a single family home with a friend, Ms. Sandra Brown, and her twenty-three year old son (R. 470).  Ms. Brown does the majority of the household chores and the shopping (R. 471).  Plaintiff was able to dust to a certain degree.  Plaintiff needed Ms. Brown's assistance getting into the bath tub and putting on his shirts because of his shoulder pain (R. 474).

Plaintiff estimated that he could stand for fifteen to thirty minutes without feeling pain, but any longer than that would cause his leg to cramp up and give out on him (R. 472-73).  He used a cane, which was prescribed to him by his doctor (R. 473).  Plaintiff estimated that he could sit for thirty to forty-five minutes before having to get up and move around because of stiffness in his back (R. 474). He was able to lift a gallon of milk with two hands, but if he tried to lift more than that he dropped the object.  Plaintiff described an incident when he attempted to

lift a fifteen-pound bag of dog food for Ms. Brown, but was unable to do so without dropping it. Plaintiff takes daily walks around the block (R. 472). He estimated that it takes him thirty to forty minutes because of a need to take three or four breaks.

Plaintiff was incarcerated from 2001 until 2003 for possession of crack cocaine (R. 484). He stopped using cocaine in 2001 when he was incarcerated. He also testified that he quit drinking twenty years ago.

Plaintiff worked in the past as a certified nursing assistant (R. 486). He testified he would return to that employment if he could because "[he] loved doing it. [He] loved working with older people, with the geriatrics."

### 2. **Medical Evidence**

Plaintiff was treated by Mohammad Ghaffarloo, M.D., several times between June 15, 2000, and February 13, 2001 for his diabetes (R. 114-25). On June 15, 2000, Plaintiff was diagnosed with uncontrolled diabetes, diabetic neuropathy and peripheral vascular disease (R. 122). The medical records indicate that during this visit Plaintiff stated he drinks on a social basis. On June 27, 2000, and July 18, 2000, the medical records indicate Plaintiff's sugar levels were improving (R. 117-18).

On March 14, 2001, Plaintiff was treated for chest pains (R. 278). The medical records indicate Plaintiff has a past medical history of diabetes mellitus and substance abuse (heroin and cocaine); a cardiac catheterization revealed normal coronary arteries. He was counseled regarding his drug use.

On March 18, 2002, Plaintiff was given a psychological evaluation from the Michigan Department of Corrections while incarcerated for possession of a controlled substance (R. 172-74). He was referred for evaluation because testing indicated some level of difficulty adjusting

4

and problems with mood stability (R. 174). Allan Small, M.A., performed the evaluation and concluded that there was no immediate need for intervention. Overall, Plaintiff was stable, his comprehension was adequate and his cognitive processes appeared to be functioning well.

On April 4, 2003, x-rays of the cervical spine showed a mild muscle strain; x-rays of the right shoulder identified spurring associated with arthritis (R. 184).

A nurse practitioners note, dated June 20, 2003, indicates that Plaintiff had diabetic paresthesias in the feet, a history of Hepatitis C, a questionable cardiac history, venous insufficiency, right shoulder osteoarthritis, diabetes and a history of substance abuse and smoking (R. 403).

Medical records from July 8, 2003, indicate Plaintiff complained of shortness of breath when he walks a quarter mile and with exertion (R. 400). Plaintiff also complained of sharp chest pains.

Plaintiff attended physical therapy at the Detroit Medical Center from July 15 until August 25, 2003 (R. 383-99). Plaintiff rated his shoulder pain at seven out of ten both at the beginning and at the time of his discharge. He continued to have difficulty reaching to his back pocket or behind his head and with any kind of overhead activity. His right shoulder flexion was 120 degrees, abduction 120 degrees, external rotation eighty degrees and internal rotation sixty degrees. Strength was grossly -4/5 in all major muscle groups in the right shoulder. Plaintiff's physical therapy was discontinued, and he was given a home exercise plan (R. 384).

On August 5, 2003, P. Patel, M.D., a consulting physician for the Disability Determination Service (DDS), performed a consultative evaluation at the request of the state agency (R. 249-50). Plaintiff reported that he was on insulin, had fluctuating blood sugar and had burning, numbness and tingling in both feet (R. 250). Plaintiff's gait was slow, but Plaintiff

5

reported that he does not use a cane or walker. Plaintiff's sensation was diminished to fine touch in both feet and up to the mid-calf. Strength was 5/5 bilaterally in all extremities. Plaintiff had full range of motion of cervical spine, flexion of dorsolumbar spine was seventy-five degrees, extension ten degrees. The rest of the range of motion of the dorsolumbar spine was normal. Plaintiff had a full range of motion of the left shoulder, elbows, hands, wrists, fingers, hips, knees and ankles. He was able to get on and off the examination table. Abduction of the right shoulder was 130 degrees, internal and external rotation sixty degrees.

Dr. Patel concluded that Plaintiff was a forty-seven year old male with a medical history of diabetes with neuropathy (R. 250). Plaintiff was post myocardial infarction with continued chest pains. Dr. Patel also concluded that Plaintiff had right shoulder pain with a positive impingement sign and possibly a rotator cuff injury or arthritis.

On September 23, 2003, A.S. Dymm, M.D., a reviewing physician for the DDS, performed a Residual Functional Capacity (RFC) assessment (R. 423). Dr. Dymm concluded that Plaintiff was able to lift and carry twenty-five pounds frequently and fifty pounds occasionally (R. 424); he is able to sit, stand and/or walk for about six hours of an eight-hour workday; he is limited to occasional climbing of ramps, stairs, ropes, ladders or scaffolds; he is limited to occasional reaching in all directions, including overhead, with the right shoulder (R. 426); and, he is able to work and function on a job that does not require exertion and heavy lifting (R. 428). Dr. Dymm noted that on March 27, 2003, Plaintiff reported that he walked three miles, twice a week; on April 23, 2003, Plaintiff reported that he was feeling better and doing exercises; and, an April 23, 2003 treatment note stated that Plaintiff had improving C-Spine spasms and AC joint arthritis (R. 425).

On September 8, 2003, Plaintiff was treated for shoulder and neck pain at Detroit Medical Center (R. 379). Plaintiff rated his pain as an eight on a scale of one to ten. The physician concluded that Plaintiff did not need any strong pain medication at that time, but Plaintiff was referred for physical therapy and for an orthopedic surgical evaluation of his rotator cuff (R. 380).

On October 14, 2003, Plaintiff was treated at DRH Orthopedic Clinic for shoulder pain (R. 371). X-rays revealed some acromioclavicular (AC) osteoarthritis, but diagnosis was unclear. The differential diagnosis included AC arthritis, versus some type of impingement syndrome, versus rotator cuff tendinitis of the right shoulder. Plaintiff was prescribed Naprosyn to help with inflammation, and he was given a therapeutic/diagnostic injection in his AC joint (R. 372). The injection did not significantly improve Plaintiff's pain.

On November 25, 2003, Plaintiff had a hypoglycemic episode (R. 269). Plaintiff presented with lightheadedness, sweating and diaphoresis. A heart attack was ruled out, and an echocardiogram was satisfactory and negative for ischemia (R. 255). Plaintiff was placed in the CDU for repeat enzymes and then discharged on his normal medications (R. 255, 269).

Plaintiff was treated for a second time at DRH Orthopedic Clinic for shoulder pain on January, 23, 2004 (R. 361). The medical records indicate that the injection given to the Plaintiff at the previous visit did not relieve his shoulder pain. Plaintiff was given a series of tests measuring the range of motion of his right shoulder. He was given a different injection, which provided some immediate relief (R. 362). Plaintiff was also given a prescription for physical therapy.

On January 30, 2004, Plaintiff attended physical therapy at Detroit Medical Center (R. 357). Plaintiff complained of lower back and right shoulder pain. His strength was assessed at a

7

4 to 4+/5 in all major muscle groups in the right upper extremity (R. 358). The medical records indicate a decreased range of motion and slightly decreased strength in the right shoulder, yet there were no obvious evidence of major shoulder injury which would inhibit the plaintiff from performing his daily activities (R. 359).

On February 27, 2004, Plaintiff was discharged from physical therapy with a home exercise program secondary to poor physical therapy results (R. 353). The physical therapist noted that because Plaintiff had been dealing with his pain for a long time it might be the case that he does not believe that he is able to do daily activities independently despite the fact that he has sufficient range of motion and strength in his right shoulder to perform those activities.

On June 2, 2005, J. Duong, M.D., completed a form Medical Source Statement (R. 437).[1] Dr. Duong indicated that Plaintiff had not been capable of performing sedentary work on a regular and continuing basis, even with the freedom to alternate between sitting and standing (R. 437-38). Dr. Duong estimated that Plaintiff could sit for one hour, stand for one hour and walk for zero hours at a time before requiring a rest or alternate position (R. 439). Dr. Duong could not answer the question of the total combined hours during a work day that Plaintiff could sit, stand, walk, or needed to lie down each because Plaintiff was in constant pain. Plaintiff could lift or carry 0-5 pounds for one hour during an eight-hour workday (R. 439-40). In an eight-hour workday, Plaintiff could reach for thirty minutes; handle for thirty minutes; perform

---

[1] Dr. Duong is not listed as a treating physician in Plaintiff's May 16, 2003, Disability Report where Dr. John Reynolds is listed as the primary care physician since 1996. (R. 69). Dr. Duong indicated Plaintiff was first seen November 18, 2004 (R. 442), which was several months after Plaintiff became represented in the matter in March 2004 (R. 33). Thus the treatment relation was just over 7 months when this report was prepared, although there is no indication as to the number of medical contacts or whether Dr. Duong actually was a treating physician. Plaintiff's attorney indicated D. Duong was a treater for diabetic neuropathy in his July 7, 2006, letter to the Appeals Council (R. 444), apparently a colleague at the Professional Medical Center of Dr. James Kole in whose name the medical records submitted to the Appeals Council were ordered (R. 449- 61).

fingering for thirty minutes; and feel (with hands) for thirty minutes (R. 440-41). Plaintiff could stoop for thirty minutes, kneel for thirty minutes or not at all, and crouch for thirty minutes (R. 441-442). Dr. Duong noted Plaintiff had all of these limitations as of November 18, 2004, the first day Plaintiff presented at Dr. Duong's office (R. 442). Dr. Duong diagnosed Plaintiff with poorly controlled insulin-dependent diabetes mellitus with diabetic nephropathy (chronic renal failure) and neuropathy, hepatitis C, chronic hip pain and degenerative disc disease with chronic leg pain (R. 443). Plaintiff had decreased sensation in all extremities, and Plaintiff walked with a cane.

### 3. Evidence Submitted after the April 26, 2006 decision to the Appeals Council [2]

Plaintiff submitted medical records to the Appeals Council, from Professional Medical Center where Dr. Duong practiced, which spanned from December 12, 2005, until June 1, 2006. Dr. Duong's name is not among these records, but rather a Dr. James Kole. The first two notes indicate that Plaintiff was "comfortable" and document the ordering of laboratory tests (R. 448). The third note indicates Plaintiff suffered an attack of esophagitis on June 1, 2006 (R. 447). The remaining records are results from laboratory testing from December 12, 2005, until May 9, 2006, some of which show abnormal blood sugars and other abnormalities (R. 449-61).

---

[2]Because this evidence was not before the ALJ when he rendered the final decision of the Commissioner, it cannot be considered for substantial evidence review. *See Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 685 (6th Cir. 1992). The only purpose for which this Court can consider this additional evidence is to determine whether this case should be remanded to the agency pursuant to the sixth sentence of 42 U.S.C. § 405(g). *Cotton v. Secretary of Health and Human Services*, 2 F.3d 692, 695-96 (6th Cir. 1993). This court may remand the case if the additional evidence is new and material, and if there was good cause for failure to incorporate the additional evidence into the record at a prior hearing. 42 U.S.C. § 405(g) (sentence six); *See Wyatt*, 974 F.2d at 685; *Casey v Secretary of Health and Human Services*, 987 F.2d 1130, 1233 (6th Cir. 1993).

### 4. **Vocational Evidence**

VE Schabacker testified that Plaintiff's past work as a certified nurse's aide was semi-skilled medium work and as an orderly was heavy work (R. 487-88). ALJ Laverdure asked VE Schabacker to consider a hypothetical person of Plaintiff's age, education, and work experience, with the following residual functional capacity (RFC): light work with a right upper extremity limitation, which is the dominant extremity, no overhead reaching, no repetitive pushing or pulling as if with levers or controls, with a sit/stand option (R. 488). VE Schabacker provided the following examples of work the hypothetical person could perform: sorter, two thousand jobs in Southeast Michigan and four to five million jobs nationally; parking lot attendant, two thousand jobs in Southeast Michigan and five million positions nationally; and packaging worker, three thousand jobs in Southeast Michigan and four to five million jobs nationally.

Plaintiff's attorney then asked VE Schabacker if the need to use a cane for ambulation would affect those jobs (R. 489). VE Schabacker responded that it would eliminate at least half of the jobs in each of the three categories previously mentioned. Plaintiff's attorney then asked VE Schabacker the effect of difficulty with hand gripping and maintaining objects in their hand. VE Schabacker responded that all of the jobs would be eliminated (R. 490). Plaintiff's attorney then asked VE Schabacker to limit lifting or carrying to no more than five pounds. ALJ Laverdure clarified the question by emphasizing that the sit/stand option should be factored into the hypothetical. VE Schabacker responded that the parking lot attendant jobs would be unaffected, packing jobs would be reduced by sixty-six percent to 1,000 jobs and sorter jobs would be reduced by half to 1,000 jobs (R. 491). Finally, Plaintiff's attorney asked VE Schabacker to include the limit of no reaching and/or handling and/or fingering longer than

10

thirty minutes and no sitting longer than forty-five minutes (R. 492). VE Schabacker responded that only the parking lot attendant jobs would remain.

### 5. ALJ Laverdure's Decision

ALJ Laverdure found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2006, and that he had not engaged in substantial gainful activity at any time relevant to the decision (R. 20, 25). He found that Plaintiff's insulin dependent diabetes mellitus, right AC joint arthritis and diabetic paresthesias to the feet, were "severe" impairments within the meaning of the Regulations, but not "severe" enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, or Regulations No. 4 (R. 20-21).

Plaintiff had the RFC to lift and carry ten pounds frequently and twenty pounds occasionally; he is able to sit and stand/walk each for six hours of an eight-hour workday (for a total of eight hours); he requires the ability to rotate positions between sitting and standing at will; he is precluded from overhead reaching and repetitive pushing and pulling (as with levers) with the right (dominant) upper extremity; and, he uses a cane for ambulation (due to pain) (R. 23).

In determining Plaintiff's RFC, ALJ Laverdure accorded little weight to Dr. Duong's opinions from June 2, 2005, because they were not consistent with the medical record as a whole (R. 22). He found that the objective laboratory reports and X-rays were not consistent with the extremely reduced level of activity described by the doctor. Finally, ALJ Laverdure found that Dr. Duong appears to have accepted the Plaintiff's subjective complaints, and her opinions appeared reflective of a position of "advocate" for the patient. He found that Dr. Duong's estimates of the Plaintiff's abilities were not credible.

ALJ Laverdure also discredited Plaintiff's subjective testimony regarding his complaints (R. 23). He found that the allegations by the claimant as to the intensity, persistence and limiting effects of his symptoms were not well supported by probative evidence and not wholly credible. ALJ Laverdure noted that the record did not indicate persistent treatment for lower back pain despite Plaintiff's alleged limitations. Furthermore, ALJ Laverdure found Plaintiff's cardiac findings have been normal.

ALJ Laverdure found Plaintiff was unable to perform past relevant work. Although Plaintiff's limitations precluded him from doing the full range of light work, using Medical-Vocational Rules 202.18 and 202.11 (at age 50) as a guideline and relying on VE Schabacker's testimony, ALJ Laverdure concluded Plaintiff was not disabled (R. 24-25).

## II.     Analysis

### A.     Standards of Review

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

B.     **Factual Analysis**

In his motion for summary judgment, Plaintiff argued that (1) ALJ Laverdure improperly assessed Plaintiff's pain, limitations and credibility; (2) ALJ Laverdure did not give proper weight to the opinion and assessment of Dr. Duong; and (3) the record does not support an RFC for the performance of light work (Dkt. #8, p. 1).

1.     *Plaintiff's Credibility*

Subjective evidence is only considered to "the extent…[it] can reasonably be accepted as consistent with the objective medical evidence and other evidence" (20 C.F.R. 404.1529(a)). The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The issue of a claimant's credibility regarding subjective complaints is within the scope of the ALJ's fact finding discretion. *Kirk v. Secretary of health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981); *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

In order for an ALJ to properly discredited a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons. S.S.R. 96-7p directs that findings on credibility cannot be general and conclusory findings, but rather they must be specific. The ALJ must say more than the testimony is not credible. *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), made it clear that the ALJ cannot merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain. *Id*. at 1039.

ALJ Laverdure had substantial evidence to discredit Plaintiff's subjective testimony. He found the Plaintiff's allegations "as to the intensity, persistence, and limiting effects of his symptoms [were] not well supported by probative evidence and [were] not wholly credible" (R. 23). ALJ Laverdure found that there were, "discrepancies between the claimant's assertions and the degree of medical treatment (including medications) sought and obtained, the diagnostic tests and findings made on examination, and the level of follow-up treatment, including diagnostic testing, ordered by the treating physician." The record does indicate limited use of pain medication and no recommended surgery.

In his brief Plaintiff points out his right shoulder pain had been well documented, therefore his testimony should not have been discredited (Dkt. #8, p. 12). There is ample evidence in the record regarding Plaintiff's right shoulder pain, and ALJ Laverdure allowed for a right upper extremity limitation in Plaintiff's RFC (R. 23). Nevertheless ALJ Laverdure found Plaintiff's testimony inconsistent with the objective medical evidence. ALJ Laverdure noted that despite Plaintiff's testimony regarding his lower back problems and limitations, the record did not indicate persistent treatment for lower back pain. Furthermore, Plaintiff's cardiac findings have been normal. ALJ Laverdure did not find Plaintiff credible when looking at the record as a whole, and he properly discredited Plaintiff's testimony.

    2.    *Dr. Duong's Credibility*

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. The case law in this circuit has stated that if adequately supported by objective findings, and if uncontradicted by other substantial medical evidence of record, a treating physician's opinion of disability is binding on the Social Security Administration as a matter of law. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions

and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same); *Bowie v. Harris*, 679 F.2d 654, 656 (6th Cir. 1982); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). The administrative decision could reject a properly supported treating physician's opinion of disability if the record contains "substantial evidence to the contrary." *Hardaway v. Sec'y of HHS*, 823 F.2d 922, 927 (6th Cir. 1987).

Under the Social Security Administration regulations, the Commissioner will generally give more weight to the opinions of treating sources, but it sets preconditions for doing so. 20 C.F.R. §404.1527. The Commissioner will only be bound by a treating source opinion when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record." 20 C.F.R. § 404.1527(d); *See also*, S.S.R. 96-2p.

ALJ Laverdure found Dr. Duong's testimony not credible because it was not consistent with the medical record as a whole and Dr. Duong did not support her opinions with objective medical evidence (R. 22). ALJ Laverdure found that the extremely reduced level of activity described by Dr. Duong was inconsistent with the laboratory reports and X-rays in the medical records. Furthermore, Dr. Duong opined that Plaintiff had the extreme limitations from November 18, 2004, yet she did not submit Plaintiff's examination or treatment notes to support her opinion. He also noted that Dr. Duong credited Plaintiff's subjective complaints, which ALJ Laverdure found to be exaggerated in light of his medical records, course of treatment and limited medications. ALJ Laverdure's determination to give little weight to Dr. Duong's opinions is supported by substantial evidence because Dr. Duong failed to provide objective

medical evidence to support her opinions and the medical evidence in the record is inconsistent with her opinions.

As noted above, Dr. Duong rendered his opinion seven months after first seeing Plaintiff, and there are no treatment notes indicating how often Dr. Duong saw Plaintiff in his medical practice at Professional Medical Center. The later tests from that facility were ordered by a different doctor. The strength of an opinion of a treating source is in substantial part based on an ongoing course of treatment and contact with the patient, which is not apparent in this case with Dr. Duong.

In his brief, Plaintiff argued that based on his duty to fully and fairly develop the record, ALJ Laverdure had an affirmative duty to obtain, or enlist the assistance of Plaintiff's counsel to obtain, relevant medical records from Dr. Duong (Dkt. #8 p. 9). While it is true that the ALJ has a duty to fully and fairly develop the record so that a just determination may be made (*Highfill v. Bowen*, 832 F.2d 112, 115 (8th Cir. 1987)) and this duty still exists where the claimant is represented by counsel (*Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986)), ultimately, "the burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec. of Health & Human Servs.*, 803 F.2d 211 (6th Cir. 1986) (*citing* 20 C.F.R. §§ 416.912, 416.913(d)). Although courts have found that an ALJ has a heightened duty and must "scrupulously and conscientiously probe into, inquire of and explore for all relevant facts" to fully and fairly develop the record when a claimant is not represented by counsel (*Lashley*, 708 F.2d at 1052), courts have also found that a heightened duty only exists, "under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures." *Trandafir v. Comm'r of Soc. Sec.*, 58 Fed.

Appx. 113 (6th Cir. 2003) (*citing, Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley*, F.2d at 1052).

"There is no bright line test for determining when the administrative law judge has assumed the role of counsel or failed to fully develop the record. The determination in each case must be made on a case by case basis." *Lashley*, 708 F.2d at 1052. Here, Plaintiff was represented by counsel at the hearing; therefore ALJ Laverdure did not have a heightened duty to develop the record (R. 18). When the claimant is represented in the proceedings, the ALJ is entitled to rely on the claimant's counsel to "structure and present claimant's case in a way that the claimant's claims are adequately explored." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). Thus, the claimant's counsel must, at the least, identify any additional information that is sought. *Hawkins*, 113 F.3d at 1167. ALJ Laverdure's duty to fully and fairly develop the record did not extend to seeking medical records from Dr. Duong without Plaintiff requesting him to do so. There is no evidence in the record that Plaintiff requested ALJ Laverdure's help in obtaining the record or even that ALJ Laverdure was even aware that these medical records existed. ALJ Laverdure complied with his duty to fully and fairly develop the record, thus Plaintiff's argument is without merit. Plaintiff's counsel has not submitted on this judicial review any documents that might have made a difference to the ALJ in his decision, even though Professional Medical Center seems to have accommodated counsel's request for documents at the Appeals Council level. As noted above, those records are not sufficiently different from the data before ALJ Laverdure to warrant a remand.

Plaintiff also argued in his brief that it is not necessary that the supporting detail of a treating medical source is contained in the same document in which the physician's opinion is expressed. He argued that it is sufficient if the opinion is supportable by other medical evidence

in the record, including clinical or diagnostic findings of other physicians (Dkt. #8 p.10-11)(*citing Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984)).  ALJ Laverdure found that Dr. Duong's opinions were not supported by other medical evidence in the record, in fact Dr. Duong's opinions were inconsistent with the medical records as a whole (R. 22).  Because Dr. Duong's opinions are not supported by other evidence in the record, Plaintiff's argument is without merit.

### 3. *Residual Function Capacity*

In his brief, Plaintiff argues that based on the objective evidence of record, Plaintiff's testimony and the opinions and assessment of the treating medical sources, Plaintiff is limited to the performance of sedentary work activity at best (Dkt. #8 p.12).  Yet, ALJ Laverdure's RFC determination is supported by substantial evidence.  As discussed above, Plaintiff's subjective testimony and the testimony of Dr. Duong were properly discredited by ALJ Laverdure.  Moreover, Plaintiff's Function Report supports ALJ Laverdure's decision (R. 87-94).  Plaintiff indicated he walked one to one and a half miles per day, exercised lightly and cut the grass (R. 88).  Therefore, a review of the entire record, including the objective medical evidence, the opinions of the consultive physicians and the testimony at the hearing indicates that ALJ Laverdure's determination was supported by substantial evidence.

## III.  Evidence Submitted to the Appeals Council

Plaintiff introduced evidence submitted first to the Appeals Council, but does not make an argument in his brief for remand based on this "new" evidence.  Where a party presents new evidence on appeal to the Appeals Council that denies review or to the federal court for the first time, the Court can consider the evidence only to determine if a remand is appropriate under sentence six of 42 U.S.C. § 405(g) for further consideration of the evidence but only if the party

seeking remand shows that the new evidence is material. In this case, Plaintiff has not provided this Court with an argument for a sentence six remand. Nor is it evident that this evidence warrants a remand under sentence six of § 405(g). The laboratory reports alone without explanation do not warrant a remand. The evidence is largely cumulative of the other evidence in the record that was before the ALJ

**IV.     Recommendation**

For the reasons stated above, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local, 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 31, 2007                                   s/ Steven D. Pepe
Ann Arbor, MI                                            United States Magistrate Judge


CERTIFICATE OF SERVICE

This is to certify that on August 31, 2007 , I electronically filed the foregoing Scheduling Order with the Clerk of the Court using the ECF system which will send notification of such filing to the following parties:James A. Brunson, and I hereby certify that I have mailed a copy of the Scheduling Order to the following non-ECF parties: Andrea L. Hamm, 600 W. Lafayette, 4th. Floor, Detroit, MI 48226

                                                         s/ James P. Peltier
                                                         James P. Peltier
                                                         Courtroom Deputy Clerk
                                                         U.S. District Court
                                                         600 Church St.
                                                         Flint, MI 48502
                                                         810-341-7850
                                                         pete_peltier@mied.uscourts.gov